UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-241-GWU

BILLIE SUZANNE CAHALL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Billie Cahall brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Income and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

        impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

      Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id.</u> Accord, <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Cahall, a 44-year-old former production inspector with a high school education, suffered from impairments related to a bilateral ganglion cyst, mild osteoarthritis of the carpal joints and a cognitive and mood disorder. (Tr. 11, 16). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 14). The claimant was found capable of return to her past relevant work as well as performing a significant number of other jobs in the national economy.[1]  (Tr. 16).  Therefore, she could not be considered

---

[1] The ALJ indicated that the plaintiff's earnings from the production inspector work were not sufficient for the job to have been considered "gainful" employment under the

totally disabled. (Tr. 16-17). The ALJ based this decision, in part, upon the testimony of a vocational expert. (Tr. 17).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Anne Thomas included an exertional limitation to light level work restricted from a full range by such non-exertional limitations as (1) an inability to more than frequently push and pull with the upper extremities or to perform handling; (2) an inability to more than occasionally climb or crawl; and (3) a limitation to simple tasks or instructions in non-public settings and involving only casual and infrequent contact with co-workers or supervisors. (Tr. 57). In response, Thomas testified that Cahall's past work as a production inspector could still be performed. (Id.). The witness also identified a significant number of other jobs which could still be performed as an alternative. (Tr. 57-58). Therefore, assuming that the vocational factors considered by the expert fairly characterized the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly characterized Cahall's physical condition. Dr. Sudideb Mukherjee, a non-examining medical reviewer, opined that the plaintiff

---

administrative regulations. (Tr. 16). Therefore, alternative jobs were considered. (Id.).

would be limited to light level work, restricted from a full range by "limited" ability to push or pull with the upper extremities, an inability to more than occasionally climb ladders, ropes or scaffolds and crawl, a "limited" ability to handle objects, and a need to avoid concentrated exposure to vibrations and humidity. (Tr. 533-540). No treating or examining medical source identified the existence of more severe physical restrictions including the staff at the Veteran's Administration Medical Center (VAMC) (Tr. 217-353, 368-404, 552-572, 596-619), the staff at Parkway Medical Clinic (Tr. 405-429), the staff at the Heart Clinic of Southeastern Kentucky (Tr. 430-435, 549-551), the staff at Manchester Memorial Hospital (Tr. 436-518), and the staff at Family Medical Care (Tr. 622-638). Therefore, this portion of the administrative decision is supported by substantial evidence.

With regard to the framing of the mental factors of the hypothetical question, the undersigned finds no error. Depression, a mood disorder and memory problems were noted on occasion at the VAMC. (Tr. 258-259, 263, 268, 274, 321, 324, 369-371, 600, 615, 617). However, more severe mental limitations than those found by the ALJ were not imposed by the staff. (Tr. 217-353, 368-404, 552-572, 596-619).

Cahall was examined on two occasions by Psychologist Christopher Allen. In June of 2007, Allen's testing revealed significant sensory and perceptual problems, low average intelligence, a reduced ability to retain verbal material, a reduced ability to acquire and recall visuospatial information, reduced motor speed, and an impaired ability in reasoning for semantic/verbal and non-verbal information.

(Tr. 544).  While the claimant's psychological prognosis was said to be "guarded," specific functional limitations were not identified by the examiner.  The psychologist again examined Cahall in August of 2008 at which time she demonstrated no overt signs of severe psychopathology.  (Tr. 641).  Allen indicated that the claimant showed some improvement in her memory and immediate attention since the prior examination.  (Tr. 642).  Once again, specific mental limitations were not reported.  (Tr. 639-646).  Thus, the examiner did not report the existence of more severe mental restrictions than those found by the ALJ on either occasion.  Therefore, his opinion does not support the plaintiff's disability claim.

Psychologists Jane Brake (Tr. 354) and Edward Stodola (Tr. 519) each reviewed the record and opined that Cahall did not suffer from a "severe" mental impairment.  Thus, these reports also do not support the plaintiff's disability claim.

The record does not reveal the existence of more severe mental restrictions than those found by the ALJ.  Therefore, substantial evidence supports this portion of the administrative decision.

Cahall argues that the ALJ did not properly evaluate her subjective pain complaints.  Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain

arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Cahall was found to be suffering from a potentially painful condition. However, even if she could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs. In November of 2006, an x-ray of the left wrist revealed mild arthritic changes and a benign cyst. (Tr. 224). A January, 2006 x-ray of Cahall's hands revealed no acute or active disease. (Tr. 223). A January, 2007 x-ray of the plaintiff's right wrist revealed only mild arthritic changes with no acute change. (Tr. 225). A February, 2007 nerve conduction study of both arms was normal. (Tr. 229). In March of 2007, the claimant's ganglion cysts were noted by VAMC staff to be non-tender and asymptomatic. (Tr. 246). Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ would appear to have properly evaluated Cahall's pain complaints.

The court notes that Cahall received a partial disability award from the Veteran's Administration due to a service-connected cognitive disorder in November of 2006. (Tr. 579-595). The ALJ noted this finding in his denial decision but stated that this was a finding based on the rules of the Veteran's Administration and not binding on the Social Security Administration under 20 C.F.R. §§ 404.1504 and

416.904.  (Tr. 13).  The court notes that since the Veteran's Administration award involved a finding of partial disability, it was not necessarily incompatible with the ALJ's findings, since Social Security law requires a finding of full disability rather than partial disability for a claimant to receive an award of benefits.  As previously indicated, the ALJ found that Cahall had a mental impairment and included a number of mental limitations in his findings.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 30th day of April, 2010.

**Signed By:**
*G. Wix Unthank*
**United States Senior Judge**